# EDWARD LEROY HASLUP *v.* STATE OF MARYLAND

[No. 72, September Term, 1975.]

*Decided February 3, 1976.*

The cause was argued before MOYLAN, DAVIDSON and MASON, JJ.

*Michael J. Ragland, Assigned Public Defender,* for appellant.

*David B. Allen, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Warren B. Duckett, State's Attorney for Anne Arundel County,* and *Ronald M. Naditch, Assistant State's Attorney for Anne Arundel County,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

The appellant, Edward Leroy Haslup, was convicted in the Circuit Court for Anne Arundel County by a jury, presided over by Judge E. Mackall Childs, of murder in the first degree. Upon this appeal, he raises three contentions:

(1) That the trial judge abused his discretion in not raising, *sua sponte,* the issue of the appellant's competence to stand trial;

(2) That the court erred in admitting the appellant's confession; and

(3) That the evidence was not legally sufficient to permit the charge to go to the jury.

I. *"For the Want of a Nail, a Shoe was Lost . . ."*

The first issue turns out to be a non-issue and illustrates

the advisability, perhaps, of a Best Evidence Rule for appellate practice as well as for trial practice. Counsel for the appellant and for the appellee alike have led the Court on a wild goose chase. The scene needs to be set.

The crime in this case occurred on the night of July 18-19, 1973. The case came on for trial approximately one year later on July 9, 1974. In the meantime, the appellant had entered a plea of not guilty by reason of insanity and had been examined by the staff of the Clifton T. Perkins State Hospital. After the jury had been selected and sworn on the first day of the trial, the Assistant State's Attorney undertook, out of the presence of the jury, to make certain that the record was complete with respect to the resolution of several preliminary matters. As he addressed himself to the second of these matters, the transcript records him as saying:

"The second issue, Your Honor, is the competency of the defendant to stand trial. Now I have before me a letter dated October 2, 1973 addressed to the Honorable Thomas J. Curley, Judge of the District Court of Anne Arundel County, Re: Edward Haslup from Clifton T. Perkins, signed by Dr. Robert H. Sauer, who has been the acting superintendent for a great length of time now. I am not sure when he is going to become the actual superintendent. But *it was the unanimous opinion of the medical staff* at that time, when he was presented, that is, Mr. Haslup was presented to the medical staff conference on September 20, 1973, *that he was unable to understand the nature and object of the proceedings against him and to assist in his defense.* Now we have discussed this in chambers prior to coming into court today, that is, the Court, defense counsel and the State and it is my understanding that we are proceeding under the assumption that there is no objection being made to his ability to understand the nature and the object of the proceedings with the proviso that should it become evidence (sic) to the Court either through

> psychiatric testimony or through the Court's observations, obviously this Court would reserve the right to at anytime during the proceedings have a contrary ruling." (Emphasis supplied)

The ensuing colloquy between the court, the prosecutor and the defense attorney made it evident that the defense was not raising any issue as to competence and included the defense attorney's representation that "it is this attorney's belief that he is competent to aid us in his defense or we would not be here today. And I would state that for the record, Mr. Naditch. I believe that was the way I had put it."

Seizing, however, upon the transcript of the statement of the Assistant State's Attorney, appellant's counsel vigorously urged upon this Court that the trial judge should have raised the issue of competence, *sua sponte*, based upon the representation made to him that it was the unanimous opinion of the staff at Clifton T. Perkins that the appellant "was unable to understand the nature and object of the proceedings against him and to assist in his defense." The State, for its part, responded in kind. The briefs for both the appellant and the appellee argued at length over the responsibility of the trial judge to raise the issue of competence on his own when such a danger sign was before him. Both parties hammered away on the same issue at oral argument before this Court. The Court, in conferencing the case, gave lengthy and weighty consideration to the novel issue presented it. A full reading of the transcript did nothing to dissipate the issue.[1]

When, however, the Court looked beyond the transcript of proceedings to the full record itself, a different picture emerged. The original of the letter of October 2, 1973, from Dr. Robert H. Sauer, the Acting Superintendent of the Clifton T. Perkins State Hospital, to Judge Thomas J. Curley reveals that "it was the unanimous opinion of the medical

---

1. This illustrates one of the dangers of relying upon a printed record extract as a substitute for a full examination of the record. If even the transcript itself is no adequate substitute for the original exhibits and papers in the case, an extract from that transcript would only increase further the possibility of error in transcription.

staff that he was *able* to understand the nature and object of the proceedings against him and to assist in the defense against him." (Emphasis supplied) Another letter of the same date from Dr. Sauer to Judge Ridgely P. Melvin, Jr., then of the Circuit Court for Anne Arundel County, confirms the stenographic accuracy of that to Judge Curley. It becomes clear that the Assistant State's Attorney either inadvertently said the wrong word before Judge Childs or that the transcript itself was simply in error in adding the single syllable "un." Everything that follows on the part of the prosecutor, the defense attorney and the court is at least as consistent with the word "able" having been used as it is with the word "unable" having been used. The thrust of the State's position was simply to have the issue of competency resolved for the record and not left hanging, possibly to haunt the State halfway through the trial or upon appeal. The position of the defense attorney, indeed, makes far more sense, when the word "able" is read into the colloquy. The failure of the court even to question the situation by way of mild surprise or a moment's hesitation also makes more sense, when the word "able" is substituted for "unable." The Assistant State's Attorney was holding a copy of the letter in his hand as he was referring to it. The court, making precise reference to the date that it was sent and the date that it was filed in the record, was obviously looking simultaneously at the original of the letter. Had appellate counsel for either the appellant or appellee communicated meaningfully with trial counsel in the case or examined the entire record, this diametrically opposite version of what clearly took place at the trial could not have arisen to obfuscate the appellate proceeding, notwithstanding a minor quantitative error in the cold record which grew to gargantuan proportions qualitatively.[2]

---

2. We are not unmindful of an oblique reference to the report of a defense psychiatrist, Dr. Frank J. Ayd, which report, according to appellant's counsel, "indicated ... the question of possible competency." Such an oblique reference, in the course of abandoning the issue of competency, was, in our judgment, absolutely nugatory in its effect. Dr. Ayd was a key defense witness on the issue of the appellant's criminal responsibility. He was not present to testify at the outset of the trial when

In any event, the major point urged upon this Court by the appellant, both by way of brief and oral argument, and assiduously counter-argued by the appellee, turns out to be illusory. A great deal of time and effort on the part of all concerned could have been saved by a check of the record or by a conference with trial counsel.

These comments are not intended to be a personal criticism of the two appellate counsel in this case. The mistake was freakish and could not have been avoided by the most diligent scrutiny of the transcript. This mistake may serve, however, to illustrate the desirability of appellate counsel's conferring with trial counsel in those cases where appellate counsel were not present at trial. There will sometimes be events and situations well known to those who were in the courtroom which are simply not reflected in a transcribed record. The entire direction of an appellate position could turn upon such knowledge, if that knowledge were made known to counsel by those who were at the trial scene.

## II. "The Insubstantial Pageant" Moves On

The second issue urged by the appellant, looming large at first appearance as it loomed large both in brief and oral argument, also evaporates under closer scrutiny.

The appellant filed a pre-trial motion to suppress the confession on January 31, 1974. A full hearing was had on that motion before Judge Matthew S. Evans on March 5, 1974. Judge Evans denied the motion to suppress the confession. The transcript of that hearing was not made a part of this record. The appellant makes no reference to it

competency would normally have been adjudicated, had it been raised as an issue. Notwithstanding this somewhat cryptic reference to the report of Dr. Ayd in this regard, appellant's counsel elected to concede on the issue of competence, mentioning in passing that "The only evidence that we have any scintilla is the statement in Dr. Ayd's report and that is why I mention it." There is no indication that anything other than these two passing references was before the trial judge. When Dr. Ayd did appear on the following day to testify on the question of insanity, appellant's counsel agreed with the State that no question would be put to Dr. Ayd on the subject of competence. No question on that subject was put and no answer on that subject was forthcoming. Nothing from Dr. Ayd raised any additional problem.

and does not argue, even obliquely, that any error was made by Judge Evans in deciding as he did. That is dispositive as far as any review of the pre-trial ruling by Judge Evans is concerned.

The literal question of the admissibility of the confession was never again an issue in the case. When the case came on for trial on July 9, 1974, four months later, the appellant did not move to have the issue of the admissibility of the confession reconsidered by the trial judge. Indeed, after the jury was sworn and had retired from the room, it was the Assistant State's Attorney who reminded the court that the issue of admissibility had already been resolved. Appellant's counsel was completely acquiescent and the trial judge's only response was his expressed hope that "Judge Evans was correct in his ruling."

Following a luncheon recess, the Assistant State's Attorney, without objection, referred fully to the substance of the confession in the course of his opening statement to the jury. When, during the testimony of Sgt. Michael Wagner, the subject of the interrogation of the appellant arose, no effort was made to have the jury removed from the room. It was clear to all that the issue of admissibility had already been determined pre-trial. No request was ever made for a redetermination in that regard. *Walker v. State,* 12 Md. App. 684, 687-690, 280 A. 2d 260; *Layman v. State,* 14 Md. App. 215, 229-230, 286 A. 2d 559.

The only purpose of the testimony then being offered was for the jury to assess the weight to be given to the confession. During the direct examination of Sgt. Wagner, the Assistant State's Attorney, proceeding with extreme caution, raised the question, out of the presence of the jury, of how to offer the physical confession itself because of the notation upon it that Judge Evans had already found it to be voluntary. The only question then discussed by the prosecutor, defense counsel and court was whether that notation should be covered up:

> "Now I would ask counsel how he wants me to handle that because that might possibly be prej-

udicial to the defendant if they know that there has been a previous motion and a ruling by the Court. I am talking about the Jury, of course.

COURT: Well, I have already explained to the Jury that there are some things that the Court has to consider before they are admitted.

MR. NADITCH: Well, I might add that I would have no objection, if the Defendant would have no objection, to removing that part or covering that part, which is really a Court stamp indicating a previous proceeding, which has no evidentiary value, but only might tend to confuse them. I don't care if it is left on either but I think it is something that I am just bringing up now so that we can discuss it outside of the presence of the jury.

MR. HENNESSEY: I have no particular objection toward it going in in either form.

MR. NADITCH: All right.

MR. HENNESSEY: Whether it be previously considered or not. I would prefer that it goes in in this way because actually if there is any further proceeding emanating out of this proceeding and this was used as an exhibit on the motion and we destroy it.

MR. NADITCH: I wasn't intending to destroy it. I was thinking about covering it, perhaps.

MR. HENNESSEY: I think that the Judge's opening — the Judge's statement to the jury, I think cleared this emphatically. I think that they understand."

The direct examination and cross-examination of Sgt. Wagner went on. His full testimony was before the jury. He was testifying broadly upon the merits of the case and not simply upon the taking of the confession. He related, without objection, a brief oral admission made to him at approximately 5:30 p.m. in which the appellant acknowledged his presence at the murder scene when it was being committed. After direct and cross-examination on the

subject of the written statement, the following objection was made:

> "MR. NADITCH: At this point, Your Honor, I would offer the statement as State's Exhibit #16.
>
> MR. HENNESSEY: Object, Your Honor.
>
> COURT: All right, admit the statement."

The purpose and function of that formal objection is preeminently clear. It was necessary to preserve for appellate review the pre-trial ruling made at the suppression hearing. Without that necessary objection, the question of admissibility could not have been considered by us even had a transcript of the pre-trial hearing before Judge Evans been prepared and made a part of the record and even had appellate counsel raised a contention directed at that ruling. *Barnhart v. State,* 5 Md. App. 222, 246 A. 2d 280. Although the objection preserved Judge Evans' pre-trial ruling for review, no appellate issue has been made in that regard. As we discussed earlier, the issue is simply not before us.

It is abundantly clear that the mere making of the objection for that necessary purpose did not serve to reopen at the trial level the question of admissibility. The trial judge was never asked to reconsider that issue. No effort was made to take any testimony out of the presence of the jury. No effort was made to preclude the prosecutor from referring to the substance of the confession in his opening statement. No effort was made to shield from the knowledge of the jury the fact that a confession had been made. The appellant himself was not offered as a witness on his own state of mind, notwithstanding the fact that he could have testified outside the presence of the jury if admissibility itself were the issue before the court (or, in limine, before the jury). The appellant's attorney, with whom the appellant talked by phone shortly before giving a statement, was not called upon the issue. The appellant's family, who were with him at the State Police barracks for a considerable length of time shortly before the statement was taken, were not called upon the issue. It is clear that no one at the trial, including the appellant and the appellant's counsel, even remotely

considered the question of admissibility as being again before the court for determination.

Notwithstanding our clearly dispositive holding that nothing is before us on the question of admissibility, a comment is once again in order on the preparation for and conduct of appellate argument. Inexplicably, neither the appellant nor the appellee, by brief or by argument, has referred to the fundamental threshold question of whether the issue of admissibility is even before us. Our holding that it is not has been *sua sponte*.

Also inexplicably, both the appellant and the appellee, in brief and argument, have vigorously and extensively argued both the facts and the law on what is palpably a non-issue. It may be helpful to try to pinpoint how argument can go so far astray of the issue to which it should be addressed. Upon what evidence in this case does the appellant base his argument that the confession was involuntary and should not have been admitted into evidence? Upon what evidence in this case does the appellee base its counter-argument in this regard? It is clear that the entire argument of appellant and appellee alike is predicated exclusively upon testimony which was offered for another purpose after the issue of admissibility had already been resolved against the appellant.

All of the evidence referred to by the appellant was offered to the jury upon the issue of what weight they would give to the confession. The weight to be given evidence is within the exclusive prerogative of the fact finder and is beyond our power to review. The evidence upon which the appellant makes his present argument was not that offered on the question of admissibility, that question of admissibility already having been resolved against him. The function of the evidence offered to the jury and the nature of the issue then before it was made very clear in *Linkins v. State*, 202 Md. 212, 221-222, 96 A. 2d 246:

"Admissibility does not signify that the evidence admitted has demonstrated or proved the fact to be proved, but merely that it is received by the

> tribunal for the purpose of being weighed with other evidence. Admissibility falls short of proof. The rule of law uttered by the judge, merely declares what is sufficient to go to the jury. The jury ultimately decides upon the total effect we call proof."

Quoted with approval in *Barnhart v. State, supra,* at 5 Md. App. 224.

In keeping the analysis clean, it is indispensable that one recognize the distinction between evidence on the question of voluntariness when presented to a judge on the issue of admissibility and similar evidence on the same question of voluntariness when offered to the fact finder on the separate issue of the weight to be given a confession. The admission of a confession into evidence is not dispositive on the ultimate question of guilt or innocence in the minds of a jury. To the extent to which a jury feels that a confession was involuntary, it will give that confession little or no weight because an involuntary confession is not trustworthy as evidence. This weighing of evidence in terms of its trustworthiness and its significance is exclusively within the prerogative of the jury and is not a subject for appellate review. To the extent to which a state's witness is examined directly or is cross-examined on voluntariness for the purpose of assisting the jury in weighing the confession, such examination comes in the course of that witness's broad testimony on the merits generally. To the extent to which the defense has witnesses to offer to assist the jury in weighing a confession, such witnesses are presented when the defense puts on its case. This procedure differs from that followed when admissibility is still the issue. Then the defense testimony must interrupt the state's case because all evidence on the literal question of admissibility must be received so that the decision of whether to admit or to reject state's evidence can be made before the state rests its case.

In the case at bar, it is clear that the examination and cross-examination of Sgt. Wagner on the subject of voluntariness during the course of his broader testimony on

the merits on July 9 was made only to assist the fact finder in weighing the confession. That testimony at that time had no bearing on the issue of admissibility. *A fortiori,* later testimony given by the psychologists and psychiatrists for both the appellant and the appellee on the issue of the appellant's criminal responsibility at the time of the crime did not relate back nor have any bearing upon the issue of the admissibility of the confession in this case.

In this regard, we strenuously urge appellate counsel, when arguing a question of admissibility, to restrict themselves scrupulously to the testimony bearing on that issue and not to range abroad throughout the length and breadth of a transcript for every tidbit of testimony that might have been relevant had it been offered at the appropriate time on the appropriate issue.

We do not mean to intimate that our decision would not have been for affirmance had the merits of the admissibility question been before us. We simply decline to demean our holding by that sort of factual "boot strapping."

### III. *Legal Sufficiency of the Evidence*

The appellant's final contention is properly before us but is without merit. Even without his confession, his presence at the time and place where the murder was committed was established by legally sufficient evidence. He was seen with the victim an hour or two before the crime occurred. His fingerprints were in the murder room. Blood of the victim's type was on the appellant's clothing. Fibers from the appellant's shirt were found in the victim's apartment and on the victim's naked back, which received some 90 stab wounds. He was apprehended in the victim's automobile a short time after the murder.

The jury found the appellant to be sane. This finding was supported by the testimony of several psychiatrists who appeared for the State.

The jury found the murder to have been in the first degree. The evidence supported that finding upon either of two theories. The 90 some stab wounds, the fact that the

242

victim had been bound beforehand and the fact that the appellant muffled the victim's cries all permitted the finding of premeditation and deliberation. Independently, the fact that the victim's car was taken by the appellant and his codefendant supported a finding of murder in the first degree under the combination of the common law felony-murder rule and Article 27, § 410. *Evans v. State*, 28 Md. App. 640, 349 A. 2d 300; *Warren v. State*, 29 Md. App. 560, 350 A. 2d 173.

*Judgment affirmed.*