# RALPH MICHAEL BELLAMY *v.* STATE OF MARYLAND

[No. 140, September Term, 1981.]

*Decided October 13, 1981.*

The cause was argued before THOMPSON, MASON and WILNER, JJ.

*Martha Weisheit, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Maureen O'Ferrall, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General,* and *Stephen J. Braun, State's Attorney for Charles County,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

Ralph Michael Bellamy, the appellant, was tried before a jury in the Circuit Court for Charles County and convicted of false imprisonment, robbery with a deadly weapon, carrying a handgun, and using a handgun in the commission of a felony.

By this appeal the appellant presents six questions:

1. Whether the trial judge erred in refusing to instruct the jury that it must find that appellant's confession was voluntary before considering it with the other evidence.
2. Whether the trial judge properly denied appellant's motion to suppress his confession.
3. Whether the charges against appellant should have been dismissed for noncompliance with the time limitations of former Art. 59, § 26.
4. Whether the trial judge unconstitutionally compelled the appellant to stand trial in prison garb.
5. Whether there was improper impeachment by the prosecutor.
6. Whether the evidence was sufficient to sustain appellant's convictions.

### Facts

Lisa Marie Nichols testified that on October 4, 1979, the appellant, her boyfriend, had picked her up in a cab driven by George Sibley. Appellant directed Sibley to head toward the Waldorf area. After driving for a period of time, appellant told Sibley to drive onto a small dirt road off the main route. Nichols testified that the appellant then pulled out a gun and stated to the driver, "By now you know this is a robbery." Sibley responded, "No, I didn't." According to Nichols, appellant then ordered Sibley to get out of the cab and handed the gun to her. Sibley was then tied to a telephone pole with appellant's belt. Upon leaving the area in the cab, appellant and Nichols found a small box of money under the seat containing approximately $20.00 The two then headed toward St. Charles where they stopped to get something to eat and then "drove around" for awhile. At some point they noticed a state trooper following them. They drove into a school yard where they parked the cab and ran. Several days later they left for Florida.

State Trooper Charles Williams testified that on October 4, 1979, he had been advised to be on the lookout for a black and yellow cab. He spotted a vehicle meeting such description and followed it until it turned into the parking lot of a school. Trooper Williams blocked the entrance and called for backup units. When the other units arrived the cab was approached only to be found empty of occupants.

The appellant took the stand in his own defense and testified that in September 1979, he and Lisa Nichols had made plans to elope and go to Florida. He further testified that in order to carry out such plan he entered into an agreement with George Sibley whereby Sibley would pretend that he had been robbed so that appellant and Nichols might procure his cab. Appellant testified that Nichols was unaware of his agreement with Sibley. After the incident appellant and Nichols left for Florida where they were subsequently apprehended and returned to Maryland by Trooper Fuller and Investigator Hindle. Two days following his return, the appellant gave a confession, the voluntariness of which is now at issue. At the suppression hearing Officer Hindle testified as to the discussion he had with the appellant the day prior to the appellant's having given a statement. He stated, in part:

"Q. . . . Did anybody make any promises or offers to him?

A. No, but he made a couple of offers.

Q. What kind of offers did he make?

A. He said he would tell us everything if we would get his girlfriend off. He didn't want his girlfriend in any trouble.

Q. What did you tell him about that?

A. I told him it wasn't up to me, it was up to the State's Attorney."

On cross-examination Officer Hindle responded as follows:

"Q. When he asked you or told you that he would tell you everything if his girlfriend got off,

indicating to him that you may be instrumental in that type of —

A. *Well, I said I will see what I can do. I will talk to the State's Attorney. I can't do anything but I will talk to the State's Attorney.* (Emphasis added).

Q. You indicated to him that you would try the State's Attorney?

A. I would relay the information, to that effect.

Q. Did you indicate to him that it might be better for him if a statement was made or if he —

A. No. Statement was made before I got a chance to ask questions.

Q. Did the question — Where did the question of your talking to the State's Attorney and — What did that come to initially?

A. What do you mean by that?

Q. At what time or where?

* * *

A. Oh, that happened at the Sheriff's Department.

Q. That happened at the Sheriff's Department?

A. He started talking in Florida. He said I am going to talk, tell the whole story.

He was saying stuff. In other words, it was a small car. He was saying statements to her, I will get you off, I will take the rap, you know, statements like that."

Trooper Fuller also testified with respect to the circumstances of the appellant's confession. He stated that upon returning the appellant to Maryland, the appellant was processed, taken before a commissioner, and interviewed the following day. Trooper Fuller testified that he read appellant his Miranda rights and that appellant indicated that he would give the statement. Fuller stated that no promises, threats or other means of coercion were used to induce the appellant to make a statement. The trial judge subsequently ruled that appellant's confession was voluntary and admitted it into evidence.

## I Jury Instructions

The appellant contends that the trial judge erred in his refusal to instruct the jury that they must find the appellant's confession voluntary before considering it along with the other evidence. Maryland cases have held that a trial judge may justifiably refuse to give requested instructions where there is no evidence to support them. *See, e.g., Mayne v. State,* 45 Md. App. 483, 489, 414 A.2d 1 (1980), *cert. denied,* 101 U.S. 1347 (1981); *Bolden v. State,* 44 Md. App. 643, 653, 410 A.2d 1085, *cert. denied,* 287 Md. 750 (1980); *Tripp v. State,* 36 Md. App. 459, 463, 374 A.2d 384, *cert. denied,* 281 Md. 745 (1977). Such was the premise of the trial judge's refusal to administer the proffered instructions in the instant case. He explained:

> "The Court declines to give that instruction and the reason for it is this: The State has offered evidence to show that it was, the statement was freely and voluntarily given and that he was advised of the rights as designated in your requested instruction.
>
> "In addition, the defendant took the stand and did not allege that any inducement, threat, promises or offers of reward, were made to him to make a statement and neither did he allege that he or dispute the testimony of the officer who stated that the warnings had been given prior to the statement had not been given to him. We feel there is no evidence to put that issue before the jury."

We cannot agree with the trial judge's finding that there was no evidence upon which to instruct the jury. The circumstances of the appellant's rendition of his confession were, at the very least, questionable. Additionally, it was inaccurate for the trial judge to conclude that the appellant testified that no inducements were made to him. At trial the following dialogue occurred:

"Q. [Defense counsel]: Did any of the investigating Officers give you any indication that your giving a statement would help Lisa in any way?

A. [Appellant]: I was — It would help but it wouldn't, they didn't say it would be a guarantee.

Q. What was said, if you can recall?

A. Mr. Hindle said that he would talk to the State's Attorney.

\* \* \*

Q. And when was that statement made; do you recall?

A. That had been made the day we were brought back from Miami. From Florida.

Q. Do you recall where it was made?

A. The Sheriff's Department.

Q. Before your statement to Trooper Fuller?

A. Yes."

On the basis of this testimony as well as the testimony of Officer Hindle quoted earlier, we conclude that the lower court committed reversible error in its failure to instruct the jury as to the voluntariness of the appellant's confession.

We think the trial judge erred for another reason. It is axiomatic that for a confession to be admissible it must be demonstrated to be the free and voluntary act of the accused. *Smith v. State,* 189 Md. 596, 56 A.2d 818 (1948). The burden is upon the state to prove that the confession of the accused is a voluntary act and not the product of force or threat. *Hillard v. State,* 286 Md. 145, 151, 406 A.2d 415 (1979); *State v. Kidd,* 281 Md. 32, 37, 375 A.2d 1105, *cert. denied,* 434 U.S. 1002 (1977); *Mercer v. State,* 237 Md. 479, 483-84, 206 A.2d 797 (1965); *Combs v. State,* 237 Md. 428, 435, 206 A.2d 718 (1965); *Abbott v. State,* 231 Md. 462, 465, 190 A.2d 797 (1963).

Maryland has adhered to the two-tiered rule in establishing the voluntariness of confessions. Under this proce-

dure the jury determines the issue of voluntariness after the judge had "fully and independently resolved the issue against the accused." *Jackson v. Denno,* 378 U.S. 368, 378, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). This view was elucidated in *Gill v. State,* 265 Md. 350, 357-58, 289 A.2d 575 (1972), where the Court observed:

> "The question of the voluntary nature of a confession is initially decided by the trial judge and involves a mixed question of law and fact. If the judge receives it in evidence, its admission then becomes prima facie proof that the statement was freely and voluntarily given. Once received, the evidence pertaining to the admissibility of the confession, which was first heard by the judge, is then submitted to the jury for its ultimate consideration."

*See also, Day v. State,* 196 Md. 384, 399, 76 A.2d 729 (1950). More recently this Court in *Darby v. State,* 45 Md. App. 585, 594, 414 A.2d 248 (1980), expounded upon the function of the judge and jury in a determination of the voluntariness of a confession. Judge Wilner, speaking for the Court observed:

> "It is clear ... that although the issue of voluntariness is submitted to both judge and jury, it is submitted to each for a different purpose. The judge determines voluntariness only for the purpose of deciding whether the confession is admissible as evidence — whether the jury can hear and consider it. The jury's role is to determine what, if any, weight to give the confession. If, contrary to the judge, the jury concludes that the confession is involuntary, it nevertheless remains as evidence in the case — it is not withdrawn as an exhibit, the testimony regarding it is not expunged; the jury simply gives it no weight."

As we have stated where there is an evidentiary dispute, the primary role of the judge is to rule upon the admissibility of evidence while the jury's function is to determine the

weight to give such evidence. This basic principle is, of course, applicable to the determination of the voluntariness of confessions. *See, Linkins v. State,* 202 Md. 212, 221, 96 A.2d 246 (1953); *Barnhart v. State,* 5 Md. App. 222, 246 A.2d 280 (1968). However, where the disputed evidence consists of a confession, there is an additional requirement that the jury disregard the confession if they do not find it voluntary beyond a reasonable doubt. *Gill v. State, supra; Darby v. State, supra.* Such factor lends a distinguishable characteristic to a jury evaluation of a confession as compared to other types of evidence. Thus, it is clear that general instructions as to the treatment and evaluation of evidence will not suffice with respect to the voluntariness of a confession.

In the present case after the trial judge concluded his instructions, counsel requested that the jury be additionally instructed that before they could consider the confession in arriving at their verdict they must find beyond a reasonable doubt that the confession was free and voluntary. As noted by the trial judge the requested instruction accurately reflects the status of the law with respect to jury determination of the voluntariness of a confession. However, the trial judge refused to give the instruction as the result of his belief in the absence of evidence to support the appellant's contention.

In view of the importance and distinct nature of jury instructions relating to the voluntariness of a confession, we hold that whenever a confession is introduced into evidence and instructions as to its voluntariness are requested, the trial judge must administer the proffered instruction regardless of his personal belief in the absence of evidence necessary to support the contention of involuntariness. While no Maryland cases have explicitly cited this proposition, the history and spirit of the law in this area implicitly requires this holding. *See generally, Dempsey v. State,* 277 Md. 134, 355 A.2d 455 (1976); *Gill v. State, supra; Linkins v. State, supra; Darby v. State, supra; Kidd v. State, supra; Haslup v. State,* 30 Md. App. 230, 351 A.2d 181 (1976); *Barnhart v. State, supra.* We also note that the *Maryland*

*Criminal Jury Instructions* § 2.25 indicates that this particular instruction or its equivalent should be given whenever it is requested and:

> "Evidence has been introduced that the defendant confessed that he committed the crime with which he is charged.
>
> \* \* \*
>
> "The burden is on the state to prove to you beyond a reasonable doubt that the alleged confession was freely and voluntarily made. You must weigh any circumstances of pressure against the power of resistance of the defendant. A voluntary confession is one which, under all of the circumstances, is the product of a free and unconstrained will which has not been overborne or compelled.
>
> In considering whether the alleged confession was free and voluntary or not, you may consider the length of time, if any, the defendant was questioned, the physical and mental condition of the defendant, the time period which lapsed, if any, between the time of being advised of his rights, the other persons present, the time of making the alleged confession, and all other circumstances surrounding the making of the alleged confession, including the age, background, education, experience, and intelligence of the defendant.
>
> The burden is on the state to prove to you beyond a reasonable doubt that the alleged confession was freely and voluntarily made. It must prove beyond a reasonable doubt that there were no threats or violence, or any direct or implied promises, however slight, or any improper influence which caused the defendant to make the alleged confession. A confession is not voluntary if induced by promises of leniency regarding the defendant or another.
>
> If you find that the evidence shows beyond a reasonable doubt that the confession was freely and voluntarily made by the defendant, then you may

consider it along with all other evidence presented in arriving at a verdict."

Merely because the court has instructed the jury that the State must prove its case beyond a reasonable doubt does not inform the jury that a confession cannot be considered by them until they first find it was given freely and voluntarily.

## II Voluntariness of Confession

The appellant contends that the trial court erred in refusing to suppress his confession from the evidence. This contention is primarily based on the agreement by Officer Hindle to speak to the State's Attorney with respect to the desired release of the appellant's girlfriend, Lisa Marie Nichols.

In the endeavor to identify with some degree of regularity the existence of a voluntary confession, numerous cases over the past 100 years have attempted to delineate and clarify the boundary between that of proper police conduct from that of improper police conduct. *See, e.g., Edwards v. State,* 194 Md. 387, 71 A.2d 487 (1950); *Lubinski v. State,* 180 Md. 1, 22 A.2d 455 (1941); *Watts v. State,* 99 Md. 30, 57 A. 542 (1904); *Biscoe v. State,* 67 Md. 6, 8 A. 571 (1887); *Nicholson v. State,* 38 Md. 140 (1873).

One of the most recent ventures into this area is *Hillard v. State, supra.* In *Hillard,* the investigating officer had told the defendant that if he were to render a confession he, meaning the officer, would "go to bat" for him. The trial judge concluded on the basis of the testimony and the record the following:

"So what this defendant was in fact told by Jones, and I find as a fact this is what he was told, that if you are telling me the truth about your involvement in the occurrence, I will go to bat for you to the extent that I will tell the State's Attorney's office and the Court, number one, that you have cooperated, number two, you have told me the

truth, and number three, I believe you were not knowledgeable as far as the murder was concerned." 286 Md. at 153.

Thus it was held that the promise to go to bat for the defendant was equivalent to a promise to speak to the State's Attorney in the defendant's behalf. This finding was adopted by the Court of Appeals. *Id.* at 153. The Court of Appeals ultimately concluded that the defendant's statements had been induced by the promises of the investigating officer and were therefore inadmissible. In reaching this decision the Court averred:

> "[U]nder Maryland criminal law, independent of any federal constitutional requirement, if an accused is told, or it is implied, that making an inculpatory statement will be to his advantage, in that he will be given help or some special consideration, and he makes remarks in reliance on that inducement, his declaration will be considered to have been involuntarily made and therefore inadmissible." *Id.* at 153.

In the present case we have a direct representation to the effect that the officer would speak with the State's Attorney on behalf of the appellant. This is precisely what the holding of *Hillard* sought to avoid. The Court of Appeals in rendering such decision clearly manifested its intent to deter the police from making *any* statements to a defendant which would plant the seed of the possibility of an advantage as a result of the rendition of a confession. For this Court to uphold the admissibility of a confession under the facts of the present case would be to disregard the affirmative mandate established in *Hillard.*

Although *Hillard* dealt with the inducement of an individual who desired to secure a benefit or advantage for himself, subsequent cases have demonstrated that the principle of *Hillard* is applicable to those situations where a defendant desires to protect one other than himself. In *Stokes v. State,* 289 Md. 155, 423 A.2d 552 (1980) the Court of Appeals estab-

lished that an improper inducement may arise from a promise not to arrest or harm a near relative. In that case police officers executing a search warrant for controlled dangerous substances induced the defendant to recall the location of the drugs by telling him "that if he would produce the narcotics, his wife would not be arrested." *Id.* at 157. Concluding that the evidence thus procured was inadmissible, the Court held:

> "[W]e make clear here, even if beclouded until now, that the mandate of that case [*Hillard v. State*] encompasses the issue presented in this case and is dispositive of it. The rule in *Hillard* announces that a statement is rendered involuntary if it is induced by any official promise which redounds to the benefit or desire of the defendant. And this necessarily includes a promise not to harm (physically or emotionally) a near relative with whom the defendant naturally has a close bond of affection." 289 Md. at 160.

In a footnote to this passage, the Court stated that "we have no occasion here to consider whether kinship is required, or the degree of closeness (kinship or otherwise) that a defendant must have to the affected third party, before the coercive effect of such inducements may be found to exist." *Id.* at 160, n.2. Thus, while the Court of Appeals has not had the opportunity to rule on the applicability of the *Hillard* standard to a situation other than a near relative, such application under the present facts is both logical and appropriate.

There is little doubt that the relationship between the appellant and Lisa Nichols was sufficiently close as to furnish the motivation to secure the release of the other. Appellant had testified that the two were engaged and had made plans to elope to Florida. Moreover, the very willingness of the appellant to exchange a confession for the release of Ms. Nichols provides clear indicia that her welfare was crucial to him. Under these circumstances, Officer Hindle's promise to "talk to the State's Attorney" about

securing her release clearly produced the expectation of benefit precluded under the principles of *Hillard*. There was no attempt by the state to meet its burden to show that the promise did not induce the confession. The state's argument on appeal is, at best, based on an ambiguity. Thus, we hold that the defendant's subsequent inculpatory statement had been improperly induced; as such, the trial judge committed reversible error in admitting such statement into evidence.

### III Time Limitations on Insanity Report

On December 17, 1979, the trial judge, after a suggestion of incompetency and a plea of insanity was filed, ordered an examination by the Department of Mental Hygiene. The results of this evaluation were not received until February 19, 1980. Thus there was a failure to comply with the 60 day requirement of the former Md. Ann. Code. art. 59, § 26 (a). The appellant contends that the lower court erred in its refusal to dismiss the charges against the appellant on the basis of this non-compliance. We do not agree.

The former § 26 provided that:

> "(a) Where a defendant interposed a plea in writing pursuant to § 25 of this article, the Department shall forward a report of its opinions relating to insanity at the time of commission of the alleged offense and to competency to stand trial to the court having jurisdiction over the defendant within 60 days after referral."

We think that the legislature did not intend that criminal charges should be dismissed because the Department of Mental Hygiene was late in filing its report. This is evidenced by two factors. First, the former art. 59, § 26 provided no sanction for failure to comply with its provisions. *See, Resetar v. State Board of Education,* 284 Md. 537, 548, 399 A.2d 225, *cert. denied,* 444 U.S. 838 (1979); *Maryland State Bar Association v. Frank,* 272 Md. 528, 533, 325 A.2d 718 (1974); *Pope v. Secretary of Personnel,* 46 Md. App. 716, 717, 420 A.2d 1017 (1980). Second, it is significant to note

that § 26 was amended, effective July 1, 1980 so that it now provides that, "failure to comply with these time limitations shall not, of itself, result in dismissal of the charges." *See,* art. 59, § 26 (1980 Cum. Supp.). The 1980 amendment clearly evidences legislative intent to alleviate any doubt as to whether the sanction of dismissal is applicable to § 26. Additionally, as subsection (a) was not changed with the enactment of the new statute, it clearly would not be logical to assume that dismissal was the proper sanction under the former statute. In addition, we would be most reluctant to impose the extreme penalty of dismissal of the charges, absent a clear mandate from the legislature.

## IV Prison Garb

Inasmuch as we will reverse this case for the reasons set out above, there is no need for us to review this question because it seems unlikely that police officers will permit a new jury to view the accused either in prison garb or in handcuffs.

## V Improper Impeachment

The appellant contends that he was prejudiced by (1) the line of questioning regarding the sentences received for two previous robbery convictions and (2) the questioning concerning the November 1973 classification as a defective delinquent.

There was no objection to the testimony concerning the robbery convictions; thus the question has not been preserved for review. Md. Rule 1085. With respect to the questioning regarding the defective delinquent adjudication, the state concedes that such question was improper and we agree.

## VI Sufficiency of the Evidence

The appellant also contends that the evidence is insufficient to sustain his convictions. If we ignore both the

appellant's inadmissible written statement and his testimony at trial,[1] the sufficiency of the remaining evidence is questionable. We must nevertheless grant a new trial in order to allow the state to submit any additional evidence it may have withheld relying on the correctness of the trial judge's rulings. *See, Hillard v. State, supra,* 286 Md. at 159, n.5; *State v. Boone,* 284 Md. 1, 16-17, 393 A.2d 1361 (1978).

> *Judgments reversed and remanded for a new trial.*
>
> *Costs not reallocated pursuant to Maryland Rule 1082 f.*

---

**1.** *See,* Harrison v. United States, 392 U.S. 219, 222, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968).