STATE OF IOWA, Appellee, v. ROY D. BETHARDS, Appellant.

No. 47163.

(Reported in 32 N. W. 2d 769)

June 15, 1948.

Theodore F. Mantz, of Des Moines, for appellant.

Robert L. Larson, Attorney General, Don Hise, First Assistant Attorney General, Earl R. Shostrom, Special Assistant Attorney General, and Carroll O. Switzer, County Attorney, for appellee.

BLISS, J.—Defendant was charged with, tried for, and convicted of a minor traffic violation, but under the statutes he is compelled to come to this court for a review.

The facts as they appear from the municipal court records, which have been certified to us, and from the abstract, are in substance as follows: Defendant, who lives at 1920 East Twenty-seventh Street in Des Moines, on the morning of August 26, 1947, drove his car south on East Thirtieth Street. His wife was with him. As he approached Grand Avenue, something went wrong with the car and he drove over against the west curbing and the car stopped just north of Grand Avenue, headed south, at the northwest corner of the East Thirtieth Street and Grand Avenue intersection. His wife left the car to go to the state fairgrounds. Apparently the Fair was being held. R. W. Grubb, a police officer of Des Moines, was standing in the middle of the intersection directing traffic. He had stopped the traffic going east and was directing the north-south traffic to proceed. He motioned the defendant to come on. Defendant testified that he told Grubb he was out of gas, that "it has something in the line, it will run a while and stop and after you sit a few minutes it will run again so she [Mrs. Bethards] said to him, she said we are not out of gas and he was going to

help push it and I drove on." The car was there about two minutes. Defendant testified that there was but little traffic at the time.

Policeman Grubb's version of the transaction varies little from that of defendant. He left his place in the intersection and came over to push the car, as it was obstructing traffic for "at least 100 yards." Just how the car parked as it was could do this is not clear. He asked defendant to get out and help push, and defendant told him that he was not out of gas, and upon trying the ignition again the car started. Grubb testified: "I then told him to get out of here or I will take you to jail for obstructing traffic. He started laughing and told me to kiss his * * *." We complete the testimony by noting that the defendant indecorously designated the place of osculation.

Apparently considering the defendant's offense was obstructing traffic with aggravation, Officer Grubb left his traffic directing job and pursued the defendant to his home and gave him a "ticket." Just what was on it does not appear.

Sometime in the early forenoon of August 30, 1947, Grubb obtained an information blank—a card about the size of a postal card. It has printed designations thereon followed by blank lines to be filled according to the facts of the particular case. At the top of the card is the heading substantially in this form:

"In the Municipal Court of the City
of Des Moines, Polk County, Iowa.
INFORMATION
City of Des Moines
State of Iowa
vs.
_____ ."

The defendant's name was written on the above line. Below in writing and print the information stated that defendant, "at East 30th and Grand on 8/26/47 at 9:15 a.m. in the City of Des Moines, in the County of Polk and State of Iowa unlawfully and wilfully Obstructed Traffic and contrary to the statutes in such cases made and provided and against the peace and dignity

of the State of Iowa and contrary to an ordinance of the City of Des Moines in such cases made and provided."

The information was subscribed and sworn to by Grubb before Judge GRUND on August 30, 1947.

As shown by the Municipal Court Docket in the case, a warrant was issued that morning and an officer arrested defendant and brought him into court. Defendant pleaded not guilty and trial was set and had in the forenoon of August 30, 1947, before the court.

Officer Grubb testified in substance as we have noted. The abstract then shows:

"The Court [addressing defendant] : You come over here and take the stand and tell me your side of the story." Under examination by the court defendant told his version of the matter as we have stated herein. The court asked him about two other traffic violations. Following this testimony the abstract then shows:

"August 30, 1947, at 9:50 a.m. The Court : The court finds you guilty for obstructing traffic. It will be the judgment of the court you be committed to the county jail of Polk County, Iowa, for a period of ten days."

The Municipal Court Docket shows:

"8/30/47 Def't. found guilty. Sentenced to 10 days in Jail. Bond on appeal $300.00. H. B. Grund.

"8/30/47 Def't. Committed.

"8/31/47 Def't. appealed to Iowa Supreme Court, filed $300 bond, and release issued. * * * H. B. Grund, Municipal Judge."

On the docket the words "City of Des Moines" are stricken from the title of the case, and it appears as "State of Iowa v. Roy D. Bethards", and the crime charged is stated to be "Obstructing Traffic." Defendant was in jail twenty-four hours or more before he was released.

I. Defendant assigns two errors. The first is that "the information filed in this cause has no validity."

■ The requirements of an information in a nonindictable offense are stated in section 762.3, Code, 1946, as follows:

"Contents of information. Such information must contain:

"1. The name of the county and of the justice where the information is filed.

"2. The names of the parties * * *.

"3. A statement of the acts constituting the offense, in ordinary and concise language, and the time and place of the commission of the offense, as near as may be."

The crime of which the defendant is accused should be stated in the information. (Section 762.4.) In the information defendant is accused of "Obstructing Traffic."

Subsection 1 of section 762.3 was complied with. Subsection 2 was complied with in part. It correctly named the defendant. But for the plaintiff it named two, the "State of Iowa" and "City of Des Moines." Defendant was charged with a single so-called offense. Under the record, it could not have been against both the State and the City. If the obstruction of traffic violated an ordinance it was a Class D action under section 602.25 of the Code, and the defendant would be summarily tried by the court, and his appeal would be to the district court. If the offense was against the State, the action was a Class C one under section 602.25, triable to a jury, and any appeal would be to the supreme court. There was no compliance with subsection 2 of section 762.3. An information so entitled would tend not only to misinform a defendant, but to mislead him. Defendant was tried by the court. He may have waived a jury trial. The record is silent on the matter. If he did not ask for a jury it may have been that he was misled. The provisions of said section 762.3 are mandatory. Defendant has not specifically argued the point mentioned in this division.

■ II. Was subsection 3 of that section complied with? No statute was designated as having been violated by the obstruction of traffic in the information, or on the docket, or in the trial. The State in argument seems undecided in the matter. Section 321.294, Code of 1946, has to do with the circumstance

of a motorist driving so slowly as to impede or block the normal and reasonable movement of traffic. The State does not rely on that statute, and the facts shown do not establish a violation of it.

The State in argument urges that defendant violated section 321.229 of the Code, which provides that no one shall willfully refuse to comply with the orders of a traffic officer. It urges also that defendant obstructed traffic in violation of Code section 321.358(13) by stopping or parking where an official sign prohibits stopping or parking. There was no charge against defendant for violating either statute, and the evidence does not support such charges. Grubb did not testify that there was any No Parking sign where defendant stopped. On the back of the information, someone—apparently Grubb—at sometime not designated, made some unsworn comments about what took place at East Thirtieth Street and Grand Avenue when the alleged offense was committed. Among the comments is the statement that defendant "stopped in a No Parking."

With respect to defendant's challenge to the validity of the information, the State contends that such an attack should have been made before the plea. There is authority for this contention. See State v. Porter, 206 Iowa 1247, 220 N. W. 100. The State also cites State v. Ford, 222 Iowa 655, 657, 269 N. W. 926, 927, and State v. Weston, 225 Iowa 1377, 1379, 1380, 282 N. W. 774, 775. The Ford and Weston cases are against rather than for the State's position. In the Ford case, an appeal from the Municipal Court of Des Moines, the information was neither signed nor sworn to, and violated section 13559(3), Code of 1935, now section 762.3(3). In sustaining the attack upon the information, the court said:

"We think the document, under which the defendant in this case was prosecuted and found guilty, wholly fails to comply with almost every essential element of an information. Regardless of conditions which may exist in a large city, and which it might be argued justify some simplification and latitude in the processes and procedure of municipal courts, in order to facilitate the transaction of their business in prosecution of minor offenses, we do not think any such conditions can justify

an utter failure to comply with the traditionally essential and statutory safeguards which must be followed in all prosecutions of offenses of a criminal nature."

In the Weston case, in reversing a conviction in the Municipal Court of Des Moines on an information which was not sworn to, the court, speaking through Chief Justice SAGER, said:

"It is urged in behalf of the state that it was the duty of the defendant to raise the question of insufficiency of the information before the trial, and that, failing therein, he waived the right to object here. The cases cited to support this contention have to do entirely with indictments and county attorneys' informations. We are not disposed to extend this rule, in the absence of a statute compelling it, so as to require those charged with minor and, in many cases, inadvertent infractions of the law, to go to the expense of employing attorneys to advise the prosecuting officers how informations in these cases shall be drawn in order that the defendant may be properly convicted."

The comments in these cases are quite apropos here. The State also cites City of Des Moines v. Pugh, 231 Iowa 1283, 1286, 2 N. W. 2d 754, 756, in which the defendant was found guilty of driving through a boulevard stop sign at Forty-second Street and Kingman Boulevard. The information charged defendant thus—"No Blvd Stop at 42 Kingman." Defendant insisted that the description referred to a house number on Kingman Boulevard and not to a street intersection. We held that the description fully informed the defendant and that it could not be raised for the first time on appeal. The decisions in the Ford and Weston cases were held not to sustain the defendant's contention because of the serious defects in the informations in those cases. We might for the same reason say that the Pugh case is not controlling here, but in view of our determination of this appeal we do not consider it necessary to pass upon the question of whether the defendant did or did not waive any invalidity or any insufficiency in the information.

III. Defendant argues that the court erred in ordering him to take the witness stand and give evidence against himself. It would have been better had the court told the defendant

that he might testify in his own behalf if he wished to, rather than directing him to take the stand, particularly when the court by its own examination brought out incompetent testimony harmful to his defense. It is our conclusion that the error, if any, was not reversible error.

IV. Defendant's second assignment of error is that the evidence is wholly insufficient to support the conviction. This assignment is good. The undisputed evidence establishes that in the morning of August 26, 1947, the defendant took his wife to the State Fair, and that because of some defect, obstruction, air-lock, or other interference in the gasoline feed line to the carburetor, the flow of gas was sometimes intermittent and irregular, but the trouble would soon clear up, and the engine would properly function. It was such a mishap which caused defendant to guide his car out of the traffic and over parallel and close to the curb. His wife then got out and went across to the fairgrounds. Both she and the defendant told Grubb what the trouble was but the latter was insistent and threatened to take defendant to jail. The car then started without any pushing. Defendant was charged with unlawfully and willfully obstructing traffic. The evidence not only does not establish such an intent or purpose on the part of the defendant, but it clearly establishes the contrary, and that any interference with traffic was wholly inadvertent and unintentional and beyond his control. The charge was neither warranted nor established by the weight or quality of evidence required by law. Whether there was any obstruction was a question of fact, but the physical facts clearly indicate that a car standing where this one was could interfere with traffic only slightly on a street sixty feet wide.

There should be no hesitation to set aside a judgment in any case, and particularly a judgment of conviction in a criminal case, where it is against the clear weight of the evidence. State v. Wilson, 234 Iowa 60, 97, 11 N. W. 2d 737, 755, and cases cited.

The judgment is reversed.—Reversed.

All JUSTICES concur, except MANTZ, J., who takes no part.