STATE of Iowa, Appellee,

v.

George Junior NOWLIN, Appellant.

No. 57887.

Supreme Court of Iowa.

July 30, 1976.

Thomas M. Walter, Ottumwa, for appellant.

Richard C. Turner, Atty. Gen., David L. Brown, Asst. Atty. Gen., and Eugene J. Kopecky, Linn County Attorney, for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, HARRIS and McCORMICK, JJ.

HARRIS, Justice.

In this appeal defendant challenges his conviction of murdering Michael Servey in violation of § 690.1, The Code. The case arose from events which have become familiar because they have been the subject of testimony in this and two other prosecutions. In *State v. Nowlin*, 244 N.W.2d 596 (Iowa 1976) (filed simultaneously herewith) we affirmed defendant's conviction of murdering Maureen Connolly. In *State v. Conner*, 241 N.W.2d 447 (Iowa 1976) we affirmed the murder conviction of a companion of defendant in the same episode. In this appeal defendant raises seven assignments of error. We find them all to be without merit and affirm the trial court.

On Saturday morning March 9, 1974 George Junior Nowlin (defendant) suggested to two friends, Atwell Junior Conner and Steve Martin that they go to Conner's residence and pick up a single shot .20 gauge shotgun. The suggestion was made at the apartment of Mabel Beltz, another acquaintance. The gun was obtained and the three returned to the Beltz apartment where defendant sawed off the barrel and stock of the weapon. The three had talked vaguely of robbing someplace or someone though no specific victim had been selected. Martin testified he had seen another sawed-off .20 gauge shotgun (a 5 shot pump) in defendant's possession on a number of prior occasions.

Later the same day the three went to a Cedar Rapids tavern and played pool until about 9:30 p. m. They then started driving around. Defendant and Conner dropped Martin off at the Beltz apartment because Martin did not want anything to do with using a gun in a robbery. Martin stated both shotguns were in the car when he left it.

Defendant and Conner came back to the Beltz apartment late Saturday night or Sunday March 10. Defendant told Mabel Beltz "he had killed—they had killed two teenagers." Defendant wanted to soak blood stains from his clothes and clean the gun. Later Sunday morning Martin woke up and was told by defendant he was lucky he had not accompanied the two the previous night because defendant "killed a guy and a girl."

On Friday March 15 defendant went to the home of Beatrice Lou Fite, a 14 year-old acquaintance. Defendant drove Beatrice to the Palisades Park, telling her he wanted to show her a dead body. They walked into the timber where Beatrice saw a body later identified as that of Michael Servey. Defendant would not let her get too close to the body because it would scare her because "it was blown to pieces." Beatrice testified she asked defendant who did it and defendant replied, "Well, I did."

Defendant was arrested March 19 after Martin and Beatrice went to the authorities. While thereafter confined in the Linn County Jail defendant told two cell mates he had killed Michael Servey.

On April 9, 1974 defendant was indicted by the Linn County Grand Jury for the murder of Michael Servey. On July 16, 1974, as a result of defendant's request for a change of venue, the place of trial was changed from Linn County to Story Coun-

ty. Trial was commenced in Story County on August 5, 1974, the jury thereafter returning a verdict of guilty.

I. The boots, blue jeans, shirt, sunglasses, glasses case, and coat found on decedent's body were offered by the State and received into evidence. The shirt and coat were considerably blood stained. Defendant contends these items had no probative value and were highly inflammatory and prejudicial. Defendant admitted the openings in the shirt and jacket corresponded with wounds in decedent's body. At trial defendant offered to stipulate to any fact which the clothing might prove. He contends the trial court abused its discretion in admitting these exhibits. The contention is without merit.

"As is true of demonstrative evidence generally, the admissibility of the clothing of a homicide victim rests largely within the sound discretion of the trial court." 40 Am.Jur.2d, Homicide, § 411, p. 668. See *State v. Griffin*, 218 Iowa 1301, 254 N.W. 841 (1934). What is really involved in an appeal challenging the admissibility of such evidence is " * * * whether judicial discretion has been abused. (Authority)." *State v. Stansberry*, 182 Iowa 908, 917, 166 N.W. 359, 362 (1918).

"As a general rule in homicide prosecutions, the clothing worn by the victim at the time of the killing is admissible in evidence, even where its introduction may be prejudicial to the accused, if it tends to shed light upon a material inquiry in the case. * *. [But] where the clothing of the deceased does not serve to illustrate some point or throw some light upon a matter connected with the proper solution of the case, and especially where it will serve no purpose except to influence the minds of the jury against the accused, it should not be admitted." 40 Am.Jur.2d, Homicide, § 411, pp. 667–668. See 3 Jones on Evidence (Sixth Ed. 1972) § 15:3, p. 6; McCormick on Evidence (Second Ed. 1972) § 212, pp. 526–527 & n. 22; 3 Wharton's Criminal Evidence (Thirteenth Ed. 1973) § 636, p. 272; 4 Wigmore on Evidence (Chadbourn Rev. 1972) § 1157, pp. 336–350; 22A C.J.S. Criminal Law § 713a, b, pp. 969–973; 68 A.L.R.2d 903, § 2(a) at 906.

As the defendant argues, the trial court should balance the relevance of the blood-stained clothing against its possible prejudicial effect. See *State v. Harmon*, 238 N.W.2d 139, 144–145 (Iowa 1976); *McCormick*, supra, § 212, p. 527; 6 Wigmore on Evidence (Third Ed. 1940) § 1904, p. 574. Nowlin argues the clothing exhibits had no probative value. The State however rightly contends the exhibits were admissible and relevant to show malice, premeditation and deliberation:

"As a general rule, the * * * circumstances and facts attending the homicide may be shown *on the question of malice, premeditation, or deliberation.* [See *State v. Powell*, 237 Iowa 1227, 1238, 24 N.W.2d 769, 775 (1946)] The fierceness and atrocity of the attack, the circumstances under which it was made, the nature and extent of the injury inflicted, *the condition of the body and wearing apparel*, the deadly nature of the weapon used, and the manner of using it, are proper subjects of inquiry. * * *." (Emphasis added.) 40 C.J.S. Homicide § 205, p. 1106. See also 68 A.L. R.2d, supra, at p. 929; *State v. Leland*, 190 Or. 598, 227 P.2d 785 (1951), aff'd, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952) (defendant confessed to the stabbing and killing of victim; court admitted knife-rent clothes as relevant "upon the question of deliberation and premeditation" to show first-degree murder). Cf. *State v. Hall*, 235 N.W.2d 702, 720 (Iowa 1975) (gruesome photographs of victim " * * * If relevant for no other purpose, they certainly had a bearing on the issues of malice and premeditation. * * *.").

In the instant case an expert witness testified for the State that though the fatal wound of the victim was from a gunshot to the head the blast was likely preceded by 34 stab wounds to the chest. There was blood on the clothing, and holes in the shirt and jacket caused by a knife. The exhibits were relevant to show the intent required for a first-degree murder conviction.

The propriety of the court's ruling is unaffected by defendant's willingness to stipulate. At trial defense counsel stated: " * * * Anything that these clothes will purport to show of an evidentiary nature, I think we can stipulate to. * * *." We rejected the same contention in *Griffin*, supra, 218 Iowa at 1311, 254 N.W. at 846: " * * * By his concession * * * defendant cannot control the court's discretion in the admission of the clothing into evidence as exhibits. * * *." See *Stansberry*, supra, 182 Iowa at 917, 166 N.W. at 362; 68 A.L.R.2d at § 3(b), p. 916. See also *State v. Fryer*, 243 N.W.2d 1 (Iowa 1976) (filed May 19, 1976); 9 Wigmore on Evidence (Third Ed. 1940) § 2591, p. 589; 22A C.J.S. Criminal Law § 713b, pp. 975–976.

■ II. State's exhibit 12 was a five shot .20 gauge pump shotgun which was initially admitted into evidence over defendant's objection. After closing arguments exhibit 12 was withdrawn from consideration of the jury. The withdrawal of the exhibit was of record but was made out of the presence of the jury.

Defendant assigned two separate errors in connection with exhibit 12. He argues the trial court erred in allowing Steve Martin to testify concerning the gun when it had not been shown to be relevant in the case. He also complains the trial court erred in failing to admonish the jury not to consider the gun in its deliberation after withdrawing the same from evidence out of the jury's presence. We believe Martin's testimony was properly admitted and that the only error, harmless to defendant, was in withdrawing the exhibit.

We rejected a similar contention raised by the defendant Nowlin in his separate appeal from his conviction of murdering Maureen Connolly. *State v. Nowlin*, 244 N.W.2d 596 (filed simultaneously herewith). See also *State v. Shultz*, 231 N.W.2d 585, 588 (Iowa 1975). It is not necessary that the shotgun be demonstrated to be the one actually used in perpetrating the murder. *State v. Hansen*, 225 N.W.2d 343, 349 (Iowa 1975); *State v. Galvan*, 181 N.W.2d 147, 151 (Iowa 1970). Cf. *Moore v. Illinois*,

408 U.S. 786, 799–800, 92 S.Ct. 2562, 2570, 33 L.Ed.2d 706, 716.

Defendant has no basis for complaint. The evidence concerning the shotgun in question was properly received. The exhibit was properly received and improperly withdrawn. There was no harm in the trial court's failure to admonish the jury to disregard the evidence of the shotgun because the jury was entitled to consider this evidence.

III. Defendant moved in limine to prevent introduction of testimony concerning the murder or rape of Maureen Connolly. See *State v. Conner*, supra, and *State v. Nowlin*, supra. The State resisted the motion in limine, asserting the death of Connolly and Servey were part of the same transaction. The trial court's reaction to the motion was not entirely clear. The trial court stated:

"The motion will be sustained as to Maureen Connolly's death insofar as the prosecuting attorneys are concerned. I'm not going to sustain it as to any testimony of the witness as to what defendant told them as to any admissions made by him. However, I would caution counsel that this is a murder charge of Michael Servey and the questions should be limited to what the defendant told him, if he did, about Michael Servey. They should concentrate on this case."

Defense counsel sought an admonition to the prosecuting attorneys that they discuss with their witnesses the need to avoid references to Maureen Connolly. The court then stated:

"Yes, I'm not sure you can separate it; but I'm instructing you to ask your questions * * * directed toward the death of Michael Servey. That's the charge and that's what we're here for and insofar as possible, you should instruct your witnesses to pay attention to your questions and answer your questions and that we are here solely for the purpose of deciding the charge of murder of Michael Servey. Now don't misunderstand me. As I understand the facts here these two people were to-

gether at one time along here, and there is going to be some mention of it, but we're going to try to minimize it."

The State called Steve Martin to the stand. Martin was testifying about defendant, Conner, and himself. He stated they drove to the park and searched for the forearm of the shotgun lost when defendant struck decedent in the head. The testimony continued:

"Q. Do you recall specifically the drive out there? A. Yes.

"Q. Was there any conversation in the car on the way out there? A. Yes. George told me that he had raped the girl.

"[Defense counsel]: Just a minute. I object to that as having—being incompetent, irrelevant, and immaterial, prejudicial, having no bearing, no probative value in this case.

"THE COURT: The matter may go out, and the jury is instructed to disregard that statement. We're concerned only with statements regarding Michael Servey * * *."

Defendant moved for mistrial because of the mention of the rape of Maureen Connolly. The motion was entirely without merit. We pass the obvious effect of the trial court's prompt admonition to the jury to disregard the witness's mention of the rape. But see State v. Cage, 218 N.W.2d 582, 586 (1974); State v. Johnson, 183 N.W.2d 194, 198 (Iowa 1971).

■ We reject defendant's contention because proof of the rape and death of Maureen Connolly was properly admitted into evidence. The trial court's only error was in excluding or attempting to exclude it. Evidence of the rape was admissible to show a motive for the murder of Servey. The State could show Servey was killed by defendant in an attempt to conceal the rape and murder of Connolly. We acknowledged the propriety of such a showing in State v. Conner, supra, where the State's theory was that Maureen Connolly was killed as a part of Nowlin's effort to conceal the preceding felonies of robbery and rape. 241 N.W.2d at 464.

■ IV. Thomas Randolph, a veteran special agent with the Iowa bureau of criminal investigation (BCI), was called as a witness by the State. Randolph is chief photographer for the BCI and a crime scene technician. In his work Randolph has seen numerous autopsies and wounds.

The clothing from decedent's body was removed and placed in Randolph's custody on March 18, 1974, the morning after Servey's body was found. Randolph had observed openings in the shirt and jacket at the time of the autopsy. After indicating he had an opinion as to what caused the openings in Servey's body Randolph was asked what his opinion was. The question was objected to on the ground there was no "showing Randolph is qualified to give that kind of opinion testimony, nor has sufficient foundation been laid as to what he is basing that opinion on."

The trial court inquired of defense counsel in what respect whereupon defense counsel stated his objection was mainly addressed to lack of qualifications on the witness's part. The trial court overruled the objection noting credibility and weight would be decided by the jury. Defendant assigns this ruling as error on appeal.

It was Randolph's opinion the openings were caused by a knife or thin-bladed instrument. He based his opinion on his viewing of the autopsy. Randolph said he occasionally expressed similar opinions but did not consider himself an expert.

Dr. Weiland, a pathologist, noted puncture wounds in decedent's jacket during his examination of the body and testified without objection the puncture wounds were caused by a small pen knife type blade.

Principles controlling disputes on admissibility of opinion evidence were reviewed in State v. Peterson, 219 N.W.2d 665, 673 (Iowa 1974). To be allowed to give an expert opinion " * * * the witness must have sufficient skill, knowledge, or experience in that field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth. * * *." McCormick on Evidence

(Second Ed. 1972) § 13, p. 30; *State v. Martin*, 217 N.W.2d 536, 546 (Iowa 1974). See 2 Jones on Evidence (Sixth Ed. 1972) § 14:12, pp. 611–618; 3 Wharton's Criminal Evidence (Thirteenth Ed. 1973); § 588, pp. 137–140; 23 C.J.S. Criminal Law § 858(6)a, pp. 390–396.

" * * * [The] determination whether a witness has sufficient expertise to answer a question is within trial court's discretion, reviewable only for abuse. (Authorities). * * *." *State v. Walker*, 236 N.W.2d 292, 296 (Iowa 1975). We recently reviewed the subject of expert testimony in *Local Board of Health, Boone County v. Wood*, 243 N.W.2d 862 (Iowa 1976) (filed June 30, 1976).

Under these authorities we find no error. No hypothetical question was involved. Randolph testified on the basis of his own observations. The precise question called for limited expertise. There was testimony of ample observation. The evidence was properly received.

V. Defendant moved for directed verdict and assigns denial of that motion as error. Under the foregoing facts the assignment is wholly without merit. His contention Martin was an accomplice is not supported by the record. Even if Martin had been an accomplice there was sufficient corroboration to warrant submission of the case to the jury.

VI. Defendant assigns as error the refusal of the trial court to submit the lesser-included offense of manslaughter. There is no merit in the assignment.

Where both first and second-degree murder verdicts are submitted and a first-degree murder conviction is returned there is no prejudice for failure to instruct on manslaughter. *State v. Drosos*, 253 Iowa 1152, 1164–1165, 114 N.W.2d 526, 533 (1962) and authorities. See *State v. Troy*, 206 Iowa 859, 866, 220 N.W. 95, 98 (1928).

VII. Defendant's final assignment challenges the trial court's denial of his motion for new trial. The grounds for the motion are the same contentions previously discussed and rejected. They are without merit.

AFFIRMED.