STATE of Iowa, Appellee,

v.

George Junior NOWLIN, Appellant.

No. 59058.

Supreme Court of Iowa.

July 30, 1976.

Thomas M. Walter, of Barnes, Schlegel & Walter, Ottumwa, for appellant.

Richard C. Turner, Atty. Gen., David L. Brown, Asst. Atty. Gen., and David M. Remley, Jones County Atty., Anamosa, for appellee.

McCORMICK, Justice.

Defendant appeals his conviction and sentence for first-degree murder. He was tried and found guilty by a jury upon an indictment charging him with murdering Maureen Ann Connolly in Jones County on March 10, 1974. We have separately affirmed his conviction and sentence for murdering Michael Servey on the same occasion, *State v. Nowlin*, 244 N.W.2d 591 (Iowa 1976), and we previously affirmed the conviction and sentence of an alleged accomplice, Atwell Junior Conner, *State v. Conner*, 241 N.W.2d 447 (Iowa 1976). We also affirm here.

This case was tried in Cerro Gordo County on a change of venue. The State's evidence in this case was similar to the evidence summarized in *State v. Conner*, supra, at 450–451. However, there were two notable differences in the evidence here. Conner testified as a witness for the State in this case, and defendant interposed a defense of insanity. The case was prosecuted and submitted against defendant on alternative felony-murder theories that he murdered Maureen in perpetration of rape upon her or in perpetration of robbery upon her and Michael Servey.

As in the Conner prosecution, the State offered evidence that defendant and Conner forced Maureen and Michael into defendant's car at gunpoint in Cedar Rapids at about midnight on March 9, 1974. The jury could find the following from the evidence. Two loaded sawed-off 20 gauge shotguns, a five-shot pump weapon and a single shot weapon, were in defendant's possession. Defendant robbed Michael of $42. He then drove to a point in rural Jones County on a gravel road near Old Morley Bridge where, armed with both shotguns, he took Maureen from the car and raped her. Then, as she attempted to run away, he shot and killed her. Defendant returned to the car and directed Conner to drive to Palisades Park in Linn County. He killed Michael there.

Defendant testified he and Conner picked up Maureen and Michael because Conner

wished to rape Maureen. He said he had a fight with Michael at Palisades Park and admitted killing him in a struggle which ensued. He said he did not intend to kill Michael but lost control when Michael attacked him. He denied raping or killing Maureen. Defendant asserted he remained in the car when it was parked near Old Morley Bridge. He said Conner got out of the car with Maureen and defendant later heard a gunshot. Conner returned alone to the car and told defendant he had shot Maureen.

In support of his insanity defense, defendant offered testimony of various family members who said defendant had a history of episodes of violent temper after which he could not remember what he had done. In rebuttal, Dr. Paul Loeffelholz, director of the medical security facility at Oakdale, testified defendant did not have any serious mental disorder, and he could find no clinical basis to support defendant's claim he experienced blackouts.

The jury convicted defendant of first-degree murder, and this appeal followed.

The questions presented for review are whether trial court erred: (1) in refusing to allow defendant to defer his opening statement until the end of the State's case-in-chief; (2) in allowing evidence of a conversation by a witness with the deceased; (3) in allowing the clothing of the deceased in evidence; (4) in allowing photographs of the deceased in evidence; (5) in allowing evidence regarding a wound inflicted on decedent's body after death; (6) in allowing the medical examiner to give an opinion as to the place of decedent's death; (7) in allowing a shotgun in evidence; (8) in allowing Dr. Loeffelholz, who examined defendant at the defendant's request, to be used as a witness against him; (9) in overruling defendant's motion for directed verdict; (10) in overruling defendant's objection on constitutional grounds to the court's instruction on the felony-murder statute; and (11) in overruling defendant's motion for new trial.

■ I. *Reservation of opening statement.* After the prosecutor made the State's opening statement, defense counsel requested the right to reserve defendant's opening statement until after the State's case-in-chief. The State resisted, and the trial court denied the request. Defendant contends the court erred.

The order of trial is prescribed in § 780.5, The Code. In relevant part, it provides:

The jury having been impaneled and sworn, the trial must proceed in the following order:

1. *Reading indictment and plea.* * *

2. *Statement of state's evidence.* The county attorney may briefly state the evidence by which he expects to sustain the indictment.

3. *Statement of defendant's evidence.* The attorney for the defendant may then briefly state his defense, and the evidence by which he expects to sustain it.

4. *Offer of state's evidence.* The state may then offer the evidence in support of the indictment.

5. *Offer of defendant's evidence.* * * *

Defendant asserts the trial court has discretion to vary this order and erred here by failing to do so. Such discretion existed before the matter was governed by statute. *State v. Bateman,* 52 Iowa 604, 3 N.W. 622 (1879). The issue is now controlled by the terms of the statute. The statute does not authorize the exercise of trial court discretion to vary the order of trial over the resistance of a party. The use of the word "must" makes the designated order mandatory. See *State v. Bethards,* 239 Iowa 899, 903, 32 N.W.2d 769, 771 (1948).

The trial court did not err in refusing to permit defendant's opening statement to be given out of order.

■ II. *Hearsay.* The State's evidence showed Maureen and Michael had visited Beth Ann Wernimont in Iowa City during the evening prior to the homicides. Beth was Michael's girlfriend. She was recuperating from surgery at the home of a brother. On direct examination, Beth said she had said something to Maureen about Mi-

chael Servey during a telephone conversation earlier in the day. She was then asked, "What did you tell Maureen with respect to Michael Servey?" A hearsay objection was made and overruled. Beth answered, "I told her to call Mike and ask him if he'd bring her down because she wanted to come". Although it is difficult to see how defendant could have been prejudiced by admission of this evidence, we will examine the merits of his objection.

The offense charged here occurred after Maureen and Michael had returned to Cedar Rapids. Beth's testimony was offered to show where Maureen and Michael had been earlier. No objection was made by defendant to the relevancy of the testimony. Beth testified without objection that Maureen was her best friend, and Michael was her boyfriend. She said they arrived at her brother's home at 7:15 p. m. and remained until 11:15 p. m.

■ No reversible error exists if the trial court's ruling may be sustained on any ground. *State v. Kidd*, 239 N.W.2d 860, 864 (Iowa 1976).

■ The testimony challenged as hearsay was apparently offered to explain in part why Maureen and Michael made the trip together to Iowa City. Evidence of an utterance which is offered to explain subsequent action of the person to whom it was addressed is not hearsay. Such evidence is not offered as an assertion but to give character to conduct. *State v. Leonard*, 243 N.W.2d 887 (Iowa, filed June 30, 1976); *State v. Rush*, 242 N.W.2d 313 (Iowa 1976); *State v. Hinkle*, 229 N.W.2d 744, 748–749 (Iowa 1975); VI Wigmore on Evidence § 1772 at 267–268 (Chadbourn Rev. 1976); McCormick on Evidence § 249 at 589 (Second Ed. 1972). We uphold the trial court's ruling on this ground.

The trial court did not err in overruling defendant's hearsay objection.

■ III. *Admission of the victim's clothing.* The clothing Maureen was wearing when her body was discovered was received in evidence over defendant's objection that its probative value was outweighed by its prejudicial effect. Some of the items were bloodstained, and two articles contained holes caused by shotgun pellets.

■ Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *State v. Harmon*, 238 N.W.2d 139, 144 (Iowa 1976). The problem of balancing the probative value of evidence against possible prejudice is a matter for exercise of trial court discretion. We reverse only for abuse of discretion. *State v. Cassady*, 243 N.W.2d 581 (Iowa, filed June 30, 1976).

Here, the clothing confirmed testimony by a number of witnesses regarding what Maureen was wearing when last seen alive. The clothing tended to confirm that she was fully clothed when slain and when a rectal wound was inflicted. The clothing also tended to confirm the sequence of events testified to by the alleged accomplice Conner.

■ Evidence of this nature tends to be gruesome because murder is gruesome. That alone is not sufficient reason to exclude it. *State v. Lass*, 228 N.W.2d 758, 771 (Iowa 1975).

■ This is true even when the defendant, as here, offers to stipulate to any facts which might be proven by the clothing. A defendant cannot by such a concession control the exercise of the trial court's discretion in order to deprive the State of graphic proof of such facts. *State v. Griffin*, 218 Iowa 1301, 254 N.W. 841 (1934); *State v. Stansberry*, 182 Iowa 908, 166 N.W. 359 (1918). Defendant's problem is compounded in the present case because he is unwilling to say the clothing is probative of any relevant fact.

The trial court did not abuse its discretion in admitting the clothing.

■ IV. *Admission of photographs.* Two photographs of Maureen's head wounds were received in evidence over defendant's objection. Defendant asserted any probative value of the photographs was outweighed by their prejudicial effect.

The principles discussed in relation to defendant's challenge to admissibility of Maureen's clothing are also applicable here.

The medical examiner testified the cause of death was a shotgun wound in the back of Maureen's head. The photographs illustrated his testimony. Further, they tended to confirm other evidence of the State regarding the circumstances of the homicide. They supported the State's theory that defendant shot Maureen as she was attempting to get away from him. In addition, they were probative on issues of defendant's malice and intent. *State v. Hall*, 235 N.W.2d 702, 720 (Iowa 1975); *State v. Lass*, 228 N.W.2d 758, 771 (Iowa 1975).

The trial court did not abuse its discretion in admitting the photographs.

■ V. *Evidence of a wound inflicted after death.* The trial court admitted evidence, over defense objection, that after Maureen had been shot in the head she was shot in the rectal area. The medical examiner testified that the head wound caused the death and that the rectal wound was inflicted after death. Defendant contends evidence of the second wound was evidence of "another crime" and should have been excluded.

■ Even if the second wound was evidence of another crime, which we doubt, such evidence comes well within the rule that events and circumstances which immediately surround an offense may be shown even though they may incidentally show commission of another crime. *State v. Garren*, 220 N.W.2d 898, 900 (Iowa 1974). Such evidence is admissible when it is an inseparable part of the whole deed. *State v. Oppedal*, 232 N.W.2d 517, 521 (Iowa 1975). The second wound was an inseparable part of the whole deed here.

This is particularly true when viewed in light of State evidence that defendant raped Maureen prior to shooting her. The State's theory was that the homicide was perpetrated to conceal the earlier crimes of robbery and rape. The rectal wound caused massive damage to the vaginal area and may have been inflicted in an effort to eliminate evidence of rape.

The trial court did not err in receiving evidence regarding the rectal wound.

■ VI. *The opinion as to the place of death.* Evidence was received showing Maureen's body was found in the afternoon of March 16 in a ditch near Old Morley Bridge in Jones County. Dr. Aaron P. Randolph, Jones County medical examiner, viewed the body where it was found. He carefully examined the position of the body and the nature of the wounds. Blood from the head wound had pooled on the ground. In response to a question by the prosecutor, Dr. Randolph said he had an opinion based on his examination of the scene and the body whether Maureen died there. When he was asked for his opinion, defendant objected asserting that the doctor was not qualified to express such an opinion and that the foundation was inadequate to show the basis for his opinion. The objection was overruled. Dr. Randolph said his impression was that Maureen had died at the place she was found. Defendant contends the trial court erred in receiving this opinion over his objection.

Defendant does not challenge Dr. Randolph's qualifications as a physician or his competency to testify on medical subjects. He argues the opinion regarding place of death was not a medical opinion.

We believe Dr. Randolph's background as a physician and medical examiner qualified him to make observations of the scene and body to determine whether it was likely death occurred where the body was found. The condition of the scene, position of the body, and nature of the wounds would undoubtedly bear on the issue.

Moreover, we believe Dr. Randolph actually made such observations here. They provided ample foundation for his opinion regarding the place of Maureen's death. *State v. Peterson*, 219 N.W.2d 665, 673 (Iowa 1974).

The trial court did not abuse its discretion in receiving Dr. Randolph's opinion.

VII. *Admitting the shotgun.* The State introduced evidence showing two 20 gauge shotguns were used during the course of the events of the evening. One was the sawed-off five-shot pump shotgun admittedly owned and used by defendant, and the second was the sawed-off single shot weapon. The pump shotgun was received in evidence over defendant's objection. Defendant's only trial objection was to chain of custody. Now defendant instead contends the weapon was inadmissible because it was not identified as the murder weapon.

Defendant's present contention is untenable. We reject it because he did not include it in his objection in the trial court and because, in any event, it is without merit. Conner and defendant had the two weapons with them throughout the relevant events. Conner testified defendant had both weapons with him outside the automobile when he raped and then shot Maureen. It is undisputed that Maureen was killed by a blast from a 20 gauge shotgun. A witness testified defendant later told him the pump shotgun had been used to kill two people. Defendant subsequently attempted to dispose of it by throwing it into a river.

Whether the pump shotgun was actually the murder weapon or not, it was plainly admissible. An instrumentality in a defendant's possession or available to him, even when not identified as having actually been used in the crime charged, may be received in order to complete the picture of circumstances surrounding the event. *State v. Shultz,* 231 N.W.2d 585, 588 (Iowa 1975). A much stronger case for admissibility exists here since evidence showed the weapon was actually used during the course of defendant's criminal activities.

The trial court did not err in admitting the shotgun.

VIII. *The assertion of physician-patient privilege.* Defendant objected to testimony by Dr. Loeffelholz on the ground of privilege under § 622.10, The Code. The objection was overruled. Although Dr. Loeffelholz was not permitted to say what defendant told him, he was permitted to give the results of the examination. Defendant alleges the court erred in permitting him to do so.

The examination had been ordered on defendant's application to determine whether defendant was sane at the time of the alleged offense. It was not an examination for treatment.

Three elements must exist for the physician-patient privilege to arise under § 622.10: (1) the relationship of doctor-patient; (2) information acquired during this relationship; and (3) the necessity and propriety of the information to enable the doctor to treat the patient skillfully in his professional capacity. *State v. District Court of Iowa, In & For Linn County,* 218 N.W.2d 641, 643 (Iowa 1974). These elements must exist for the privilege to apply whether the physician is a state employee or privately employed and whether the examination is by court order or arranged by the defendant privately. McCormick on Evidence, supra, § 99 at 213–214.

In *State v. Mayhew,* 170 N.W.2d 608, 615 (Iowa 1969), this court said, "The physician-patient privilege does not arise where on order of the court a defendant is examined to determine his mental or physical condition". Defendant contends the *Mayhew* principle is inapplicable here because the order under which he was examined provided that defense counsel alone receive a copy of the doctor's report. This contention ignores the requisites for the privilege. The *Mayhew* principle relates to an examination to ascertain a defendant's mental or physical condition rather than to provide diagnosis and treatment. It does not define the only situation in which the privilege is inapplicable; it simply defines one such situation. Nor does *State v. Hansen,* 225 N.W.2d 343, 347 (Iowa 1975), support defendant's position. *Hansen* discusses waiver of the privilege when it has arisen; the case does not alter the requisites for the privilege to arise.

The standard for State use of a defense initiated psychiatric examination advocated in *State v. Collins,* 236 N.W.2d 376, 382–383

(Iowa 1975) (special concurrence), cert. denied, —— U.S. ——, 96 S.Ct. 3166, 48 L.Ed.2d ——, 44 L.W. 3735, was followed here. Dr. Loeffelholz was not called as a State witness until rebuttal. Defendant opened the door on the issue of his sanity during presentation of his evidence. Then, when Dr. Loeffelholz was called, the court sustained defendant's objection to recital of any statements made to him by defendant. We need not decide in this case whether the trial court was required to follow the standard advocated in the *Collins* special concurrence. See McCormick on Evidence, supra, § 134.

Since Dr. Loeffelholz did not examine defendant for the purpose of treatment and did not obtain information from him for that purpose, the physician-patient privilege under § 622.10 did not arise.

The trial court did not err in overruling defendant's objection based on the physician-patient privilege.

■ IX. *Refusal to direct a verdict.* The trial court overruled a defense motion for directed verdict made at the conclusion of the evidence. The motion was based on assertions that the State's evidence was wholly circumstantial and insufficient for jury consideration and that defendant's insanity had been demonstrated as a matter of law. He now repeats those contentions. In addition he alleges the motion should have been sustained because accomplice Conner's testimony lacked requisite corroboration, a ground not urged in the trial court.

The evidence against defendant was both circumstantial and direct. Conner gave direct evidence against defendant although he did not testify he observed defendant shoot Maureen. Defendant's admissions to others that he killed Maureen was direct evidence that he did so. Even though defendant testified Conner killed Maureen, his own testimony included numerous admissions which were also direct evidence bearing on his guilt. *State v. Tornquist,* 254 Iowa 1135, 1157–1158, 120 N.W.2d 483, 496 (1963). The evidence was sufficient for submission of the case to the jury.

Nor do we believe the court was obliged as a matter of law to find a failure of State proof on the issue of defendant's sanity. Defendant relied on lay testimony to support his defense of insanity. He and various family members testified to a history of episodes in which defendant would display a violent temper which he could not later remember. Although defendant testified he suffered such a blackout during the period he killed Michael, he denied he killed Maureen. He said Conner killed Maureen just before defendant recovered from his blackout.

■ We need not decide whether the evidence was sufficient to raise the insanity issue for jury consideration. Assuming it was, we believe the jury could find the State met its burden to show defendant's sanity beyond a reasonable doubt. Defendant's evidence at most raised a fact issue. The jury was free to reject it. It did not preclude a jury finding of defendant's sanity beyond a reasonable doubt. Although the burden of persuasion was on the State, the jury could find the hypothesis of insanity was excluded by the weakness of defendant's own evidence. See *State v. Thomas,* 219 N.W.2d 3, 5 (Iowa 1974).

If the jury believed the version of events presented in the State's evidence, it would reject defendant's contention Conner killed Maureen while defendant was recovering from a blackout. It would find instead that defendant killed Maureen consciously and deliberately. In addition, the State offered the testimony of Dr. Paul Loeffelholz, a state psychiatrist who examined defendant at the Oakdale medical security facility. Dr. Loeffelholz testified he examined defendant and found no evidence of serious mental disorder. He said defendant had no mental disease or defect which would affect his accountability for crime. Dr. Loeffelholz also said defendant's claim of blackout was inconsistent with what he was able to obtain clinically.

■ The third ground urged by defendant is that he should have received a directed verdict because Conner's testimony was

uncorroborated. Principles applicable to sufficiency of corroboration of accomplice testimony are discussed in *State v. Vesey*, 241 N.W.2d 888 (Iowa 1976). We have no occasion to apply them here. Defendant did not urge this ground in the trial court and may not do so for the first time here.

The trial court did not err in overruling defendant's motion for directed verdict.

■ X. *Instruction on felony-murder statute.* The trial court instructed the jury, in accordance with § 690.2, The Code, that all murder which is committed in the perpetration of rape or robbery is murder in the first degree. Defendant made timely exception to the instruction "on constitutional grounds", alleging it makes it possible for a conviction of first-degree murder to occur without proof of "specific intent to commit murder". The exception was overruled. He now attacks the statute on equal protection and due process grounds.

We do not entertain defendant's present equal protection challenge to the statute. He did not preserve error on that claim. It comes within the principle that issues not presented in the trial court may not ordinarily be raised for the first time on appeal. *State v. Greene*, 226 N.W.2d 829, 832 (Iowa 1975).

We will entertain defendant's present due process challenge to the statute because we believe his trial court exception was minimally adequate to assert that issue in the trial court.

In his due process challenge, defendant contends the felony-murder statute allows the State to avoid proving the state of mind essential for first-degree murder by presumptively supplying it when the crime occurs during the perpetration of one of the enumerated felonies. He relies on the principle that a defendant is denied due process of law when the State is not required to prove every element of the crime charged beyond a reasonable doubt. *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *State v. Monroe*, 236 N.W.2d 24 (Iowa 1975).

The fallacy in defendant's position is his assertion, without citation of authority, that willfulness, premeditation and deliberation are essential elements of all first-degree murder. The statutes which define the crime do not support this assertion.

Murder is defined as follows in § 690.1, The Code:

"Whoever kills any human being with malice aforethought, either express or implied, is guilty of murder."

First-degree murder is defined as follows in § 690.2, The Code:

"All murder which is perpetrated by means of poison, or lying in wait, or any other kind of willful, deliberate, and premeditated killing, or which is committed in the perpetration or attempt to perpetrate any arson, rape, robbery, mayhem, or burglary, is murder in the first degree, * * *."

Other murder is second-degree murder. § 690.3, The Code.

■ There is but one crime called murder in Iowa. The degrees of the offense are but gradations of the crime devised to permit punishment to be varied according to circumstances of greater or less enormity characterizing the act. *State v. Conner*, 241 N.W.2d 447, 460 (Iowa 1976).

The circumstances which enhance the punishment for murder to the penalties provided for first-degree murder are listed disjunctively in § 690.2. Two categories of first-degree murder are created by the statute. One is murder perpetrated by poison or lying in wait and any other kind of willful, deliberate and premeditated killing. The second is any murder which occurs during perpetration or attempted perpetration of one of the enumerated felonies.

This statute does not make all killings in perpetration of the designated felonies murder; it makes murder in perpetration of such felonies first-degree murder. *State v. Conner*, supra, at 463. Willfulness, deliberation and premeditation are not essential elements of murder as defined in § 690.1. They are simply elements present in one

category of murder sufficient to enhance the penalty.

Before a defendant can be punished for first-degree murder, the State must prove beyond a reasonable doubt the offense comes within one of the two categories of first-degree murder defined in § 690.2. No elements are presumed to be established, nor does the burden of proof ever shift to the defendant. The felony-murder statute does not relieve the State of the burden of proving essential elements of first-degree murder. The elements alleged by defendant to be essential are not essential. The statute defines a distinct offense punishable as first-degree murder which does not require the state of mind necessary for a separate category of first-degree murder.

The same conclusion has been reached in two recent analogous cases in other jurisdictions. *Westberry v. Mullaney,* 406 F.Supp. 407, 415–416 (S.D.Me.1976); *Warren v. State,* 29 Md.App. 560, 350 A.2d 173, 178 (1976).

Defendant's due process challenge to the trial court's instruction is without merit.

XI. *Motion for new trial.* Defendant contends the trial court erred in overruling his motion for new trial. The motion for new trial was based on grounds which have been discussed in relation to defendant's other assignments of error. They are unmeritorious. We hold defendant had a fair trial. The trial court did not abuse its discretion in overruling his motion for new trial.

We find no reversible error.

AFFIRMED.

All Justices concur except RAWLINGS, J., who concurs specially.

RAWLINGS, Justice (concurring specially).

Being satisfied the standard regarding self-incriminating statements made by an accused in course of a psychiatric examination regarding sanity at time of the alleged offense, as espoused in *State v. Collins,* 236 N.W.2d 376, 382–383 (Iowa 1975) (special concurrence), cert. denied, —— U.S. ——, 96 S.Ct. 3166, 48 L.Ed.2d ——, 44 L.W. 3735, was here commendably applied, I too find an affirmance is in order.

I would hold, however, courts *are* required to honor and apply the standard thus advocated in the *Collins* special concurrence. Without abdicating the position taken in *Collins* as to the physician-patient privilege, id. at 381–383, I concur in the result.