**STATE of Iowa, Appellee,**

v.

**Victor Gregory McDANIEL, Appellant.**

**No. 90–1609.**

Supreme Court of Iowa.

May 13, 1992.

---

John P. Messina, Des Moines, for appellant.

Bonnie J. Campbell, Atty. Gen., Julie Ann Halligan, Asst. Atty. Gen., John P. Sarcone, County Atty., and Nan Horvat, Asst. County Atty., for appellee.

Considered by HARRIS, P.J., and LARSON, LAVORATO, SNELL, and ANDREASEN, JJ.

HARRIS, Presiding Justice.

A criminal defendant, having procured a psychiatric examination at public expense, elected to request a similar examination by a second psychiatrist. May the State call the first examining psychiatrist as a rebut-

tal witness at trial? The district court allowed the testimony and we agree.

Defendant Victor Gregory McDaniel was convicted of murdering his father and attempting to murder his mother, both of whom he attacked with a knife. Factual details of the attacks need not be recited. Because of their singularly bizarre nature, it is not surprising that McDaniel planned to rely on the defenses of insanity and diminished responsibility.

To assist in preparing a defense, McDaniel applied for retention of Michael Taylor, a forensic psychiatrist, at the expense of the State. The application was granted. Three months later McDaniel filed a second application identical to the first except that this time McDaniel requested to retain Dr. Vernon Varner, another forensic psychiatrist. It was obvious that the first expert's opinion was adverse to McDaniel, and the State responded by filing an application to obtain Dr. Taylor's evaluation. The State claimed it was entitled to it under rule 13(3)(b).[1] McDaniel resisted the State's request.

The State then applied to consult with Dr. Taylor and retain him as an expert witness for the prosecution. The district court granted defendant's application for a second expert and, in a separate order, also granted the State's application to retain Dr. Taylor as a rebuttal witness.

At trial McDaniel called only his second expert, Dr. Varner. Dr. Varner diagnosed the defendant as having neurolimbic disorder with pseudosensory phenonemon, more commonly known as temporal lobe seizure or psychomotor seizure. According to Varner, McDaniel could not differentiate right from wrong, understand the nature and quality of his acts, or form the specific intent to kill.

The State called Dr. Taylor as a rebuttal witness. Taylor testified that McDaniel suffered from paranoid schizophrenia but was able to understand the nature and quality of his acts, form the specific intent to kill, and know right from wrong when he stabbed his parents. Taylor disagreed with Varner's diagnosis of temporal lobe seizures.

The jury returned verdicts of guilty on both charges. McDaniel received a life sentence for the murder conviction and an indeterminate sentence not to exceed twenty-five years for attempted murder.

The court of appeals reversed the convictions. It held that, when an indigent defendant requests a court appointed psychiatrist for the purpose of examining and assessing his or her mental condition, the psychiatrist's findings and conclusions made during the examination are "treatment" within the doctor-patient relationship. The court of appeals determined the State was required to rely upon Iowa rule of criminal procedure 13(3)(b) to discover Dr. Taylor's conclusions and decided the conclusions were not discoverable because McDaniel did not intend to call Dr. Taylor. The case is before us on further review.

■ I.   A physician-patient privilege does not arise when a defendant is examined at state expense by a psychiatrist to assist in preparing a defense. In rejecting such a contention under similar facts we said:

> Three elements must exist for the physician-patient privilege to arise under § 622.10: (1) the relationship of doctor-patient; (2) information acquired during this relationship; and (3) the necessity and propriety of the information to enable the doctor to treat the patient skillfully in his professional capacity. These

1. Iowa rule of criminal procedure 13(3)(b) states:

> [If the court orders the State to permit the defendant to inspect and copy the results of physical or mental examinations, or of scientific tests or experiments] the court may, upon motion of the State, order the defendant to permit the State *to inspect and copy the results or reports* of physical or mental examinations and of scientific tests or experiments made in connection with the particular case, or copies thereof, *within the possession or control of the defendant* and which the defendant intends to introduce in evidence at the trial or which were prepared by a witness whom the defendant intends to call at the trial when such results or reports relate to his or her testimony.
> (Emphasis added.)

elements must exist for the privilege to apply whether the physician is a state employee or privately employed and whether the examination is by court order or arranged by the defendant privately.

*State v. Nowlin,* 244 N.W.2d 596, 602 (Iowa 1976) (citations omitted). We reached a similar conclusion in *State v. Craney,* 347 N.W.2d 668, 671 (Iowa), *cert. denied,* 469 U.S. 884, 105 S.Ct. 255, 83 L.Ed.2d 192 (1984).

■ II. We, like the trial court, do not view the State's application to retain Dr. Taylor as an attempt to compel discovery of privileged matter. The State's second application, unlike its first, did not seek to examine or copy reports within McDaniel's control. Nothing in rule 13(3)(b) prevented the State from retaining Dr. Taylor. McDaniel's earlier retention of Dr. Taylor should form no such barrier. Otherwise a criminal defendant could block the State from the testimony of likely experts by procuring as many examinations from as many experts as possible.

■ III. McDaniel contends the district court's decision allowing the State to retain Dr. Taylor deprived him of effective assistance of counsel in violation of the sixth and fourteenth amendments of the United States Constitution. We rejected similar challenges in *Craney,* 347 N.W.2d at 676–77. McDaniel asks us to overrule *Craney.* We adhere to our *Craney* holding and decline to overrule it.

■ IV. We also reject McDaniel's equal protection and due process contentions. McDaniel contends the State learned of Dr. Taylor through his application requesting permission to retain him. He claims that, had he not been indigent, the State would never have learned the identity of Dr. Taylor. Although we do not suggest any legal basis for the challenge, we reject it because of factual flaws. In the first place McDaniel did not request a confidential evaluation. Moreover, at the time of the evaluation by Dr. Taylor, McDaniel was incarcerated and the State would have learned the identity of Dr. Tay-

lor when he came to prison for that purpose.

■ McDaniel's due process argument is grounded on a contention that he was entitled to the assistance of a psychiatrist, but was denied that assistance when compelled, he says, to turn his witness over to the State. He argues this deprived him of due process. *See Ake v. Oklahoma,* 470 U.S. 68, 86–87, 105 S.Ct. 1087, 1097–1098, 84 L.Ed.2d 53, 68 (1985) (criminal defendant holds due process right to assistance of psychiatrists when insanity is a likely defense). McDaniel was accorded all rights guaranteed in *Ake.* In being allowed to choose two psychiatrists he was in fact accorded more than due process demands. It is not demanded that he obtain a psychiatrist of his own liking. *Id.* at 83, 105 S.Ct. at 1096, 84 L.Ed.2d at 66. His psychiatric assistance by Dr. Varner was not compromised when Dr. Taylor was called as a rebuttal witness.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.